SCOTT *v.* STATE.

Opinion delivered April 22, 1905.

1. VENUE—JUDICIAL NOTICE.—The court takes judicial notice that an offense commited five miles east of the county seat of Monroe County was committed within that county. (Page 144.)

2. WITNESS—EXAMINATION—LEADING QUESTIONS.—As the demeanor of a witness on the stand may indicate evasions and prevarications justifying leading questions, and excusing remarks otherwise improper, such matters are in the sound discretion of the presiding judge, and it is only for abuses of such discretion in ruling upon matters incidental to the examination of a witness that new trials will be allowed. (Page 144.)

3. HOMICIDE—WORDS AS JUSTIFICATION.—Words, however opprobrious or threatening, do not justify an assault, and are not even sufficient provocation to reduce the grade of a homicide from murder to manslaughter. (Page 144.)

4. SAME—DYING DECLARATION.—A statement of a person mortally wounded is inadmissible as a dying declaration, in the absence of proof that it was made under apprehension of impending death from the injury received. (Page 145.)

5. MANSLAUGHTER—INSTRUCTION AS TO, PROPER WHEN.—A killing believed by the accused to have been in his necessary self-defense, if done in a careless or reckless manner, may call for an instruction as to involuntary manslaughter. *Ringer v. State,* 74 Ark. 262, followed. (Page 145.)

Appeals from Monroe Circuit Court.

GEORGE M. CHAPLINE, Judge.

Affirmed.

*H. A. & J. R. Parker,* for appellant.

The impeachment of the State's own witnesses by the State was error. 18 Ark. 593; 3 Rice, Ev. § 2185. It was error to refuse to instruct on the question of threats. 69 Ark. 148; McClain, Crim. Law, § § 307, 418, 423. Leading questions were improperly asked in rebuttal. 20 Wend. 235; 1 Hill, 301; 2 Car. & P. 415. The charge as to the credibility of witnesses was improper. 68 Ark. 336. The admissions of the deceased on the night he was shot should have been admitted in evidence. 70 Ark. 558, 542; 63 Ark. 382. Instructions Nos. 1 and 3 requested by the defendant should have been given. 79 Pa. 311; 71 Ill. 25; 74 Ill. 230.

*Robert L. Rogers, Attorney General,* for appellee.

The law of self-defense was fairly submitted to the jury. 47 Ark. 543; 1 Bish. New Crim. Law, 524; 73 Ark. 568.

HILL, C. J. On a plantation five miles from Clarendon in Monroe County there was a church festival and a dance, and for the further pleasure of the guests a "crap game" was opened about two hundred yards from the scene of the other festivities, in a "slash." The appellant Scott, Charles Bailey, Grant Cotton, Ed Smith and other negroes were participants in the game. An altercation arose between Bailey and Scott, in which they "passed the lie" and other complimentary terms, and made conflicting statements as to who could whip the other. Bailey tried to borrow a pistol from Ed Smith, and, on being refused, commenced searching Smith for a pistol, and scuffling with him, seemingly to take a pistol from him. While this was in progress, Scott commenced shooting, and shot four or five times. Bailey was wounded, and Cotton, who was not involved in this altercation, was killed. Scott was indicted for the murder of Cotton, and for assault with intent to kill Bailey. He was convicted of involuntary manslaughter in the murder case, and on the other indictment as charged, and sentenced to one year in the penitentiary in each case, and has appealed both cases.

As the evidence and the instructions were practically the same in each case, the latter varying only to cover the differences in the charges, the cases will be discussed as one.

1.   The first point made is that the venue was not proved. Counsel is mistaken in the record. In both cases Charles Bailey located the "crap game" on Fred Allen's place, five miles east of Clarendon, in Monroe County. Had he only located it five miles east of Clarendon, as counsel assume, it would have been sufficient, as the court would take judicial cognizance that such a point is within Monroe County. *Forehand* v. *State,* 53 Ark. 46.

2.   Complaint is made of the demeanor of the prosecuting attorney towards some of the witnesses, and in asking leading questions and other similar matters.

The appearance of witnesses on the stand, their demeanor, even the tone of voice or a look may indicate evasions and prevarications, justifying leading questions, and excusing remarks otherwise highly improper. These matters, from their very nature, cannot be reviewed in an appellate court with a full understanding of the actual occurrences, and therefore the law wisely leaves them to the sound discretion of the presiding judge, and it is only for abuses of such discretion in ruling upon matters incidental to the conduct of an examination of a witness that reversals are had, and no abuse is shown here, and the verdicts do not give evidence of any prejudice.

3.   Complaint is made that the court did not give an instruction on the force and effect of threats, and appeal is made to the rule in *Bell* v. *State,* 69 Ark. 148. That was as to previous threats, and the court held it competent to prove previous threats made by the deceased, as tending to prove who was the aggressor. There was no offer to prove threats previous to this difficulty, which was suddenly aroused at a "crap" table, and the only threats shown in the case were those introductory to the shooting, and the court properly instructed "that words, however opprobrious they may be, do not justify an assault." The court might have gone further, and instructed that words, however violent, do not justify an assault, and are not even sufficient provocation to reduce the grade from murder to manslaughter. *Vance* v. *State,* 70 Ark. 272. The appellant has no cause of complaint on this score.

4.   In the murder case the defendant offered to prove by several witnesses that Cotton said before he died that he had

accidentally shot himself. No attempt was made to prove that such statement was made under apprehension of impending death from the injury received. This is a prerequisite to the admission of such a statement in any case of dying declarations. *Dunn* v. *State,* 2 Ark. 229; *Evans* v. *State,* 58 Ark. 47.

This essential being lacking, whether it was otherwise admissible in such a case as this one need not be considered.

5. In the murder case the following instruction was given: "5. If you find from the evidence that the defendant was justified in shooting at Bailey, and that he shot at Bailey in a careless, reckless manner, and not with that caution that he should have done, under the circumstances, you will convict him of involuntary manslaughter." Appellant earnestly insists that this is not the law. The recent case of *Ringer* v. *State,* 74 Ark. 262, settles this question. The Ringer case was reversed for not submitting to the jury the question in this instruction submitted. The authorities are quoted in the Ringer case, and nothing can be added to the discussion on this point beyond referring to that case.

6. The other instructions have been carefully considered, and no departure from established precedents is found in them, and of those asked by the defendant none were refused to which the defendant was entitled, except those which had already been covered by other instructions given by the court. As there are no new questions involved in any of these instructions (they are mere applications of well established principles to the facts of these cases), no useful purpose would be served by further reviewing them.

7. It is insisted that the evidence is insufficient to sustain the verdict wherein the appellant was convicted of involuntary manslaughter. The evidence leaves no doubt that Scott in his promiscuous firing at Bailey hit Cotton. They were all close together around the "crap" table, Cotton with his leg resting on it, and he was shot in the leg. There is no evidence whatever of the shot being received from any other source. The conviction of Scott of assault with intent to kill Bailey renders the verdict in the other cases very favorable for him. The jury evidently convicted him of involuntary manslaughter based on the fifth instruc-

10

tion above quoted. This was only applicable if he was justified in shooting Bailey, whereas the other jury have said he was not justified. The killing of Cotton (aside from the recklessness of it) should be measured by defendant's status, had he struck the intended party, and in this case, that not being justifiable, the jury were fully warranted in finding him guilty of a higher grade than they did; but they took the most lenient view of his case possible, under the evidence, and he has no just cause of complaint. In the assault case the evidence fully warranted the verdict.

The court is of opinion that the appellant has had fair and impartial trials, and the judgments are affirmed.