## DAWSON v. STATE.

### Opinion delivered November 29, 1915.

1.  CRIMINAL LAW—ADJOURNED TERM—INDICTMENT BY SPECIAL GRAND JURY.—A grand jury empanelled under the authority of Kirby's Digest, § 2219, at a regular adjourned term of the circuit court sitting in regular session has power to investigate any offense which had been committed before the sitting of the regular term or during such term, but which had been overlooked by the grand jury first empanelled.

2.  CRIMINAL PROCEDURE—SPECIAL GRAND JURY—VENIRE FACIAS—ORDER NUNC PRO TUNC.—The order of a circuit judge, made at an adjourned term, summoning a special grand jury, when entered *nunc pro tunc,* in the absence of any proof to the contrary, will be *held* to have been made, that the same was not correctly entered by the clerk, and that the court, therefore, at a subsequent term, had the order correctly entered *nunc pro tunc.*

3.  CRIMINAL LAW—ABORTION—SUFFICIENCY OF EVIDENCE.—Defendant
    was charged with having killed the unborn quick child of the
    prosecutrix. *Held,* while the evidence tended to show that the abor-
    tion could not have been produced in the manner described by the
    prosecutrix, that the issue was one for the jury, under the evi-
    dence.

4.  CRIMINAL LAW—ABORTION—EVIDENCE.—When defendant was charged
    with having committed an abortion, it is not proper to ask the
    prosecutrix if she had ever missed her periods before she was
    married, since such testimony is too remote to throw any light
    upon the question as to whether or not the prosecutrix knew
    that she was pregnant with a quick child at the time the de-
    fendant committed the offense charged.

5.  TRIAL—EXTENT OF CROSS-EXAMINATION.—The extent of the cross-
    examination is within the discretion of the trial court.

6.  CRIMINAL LAW—ABORTION—EVIDENCE.—In a criminal prosecution in
    which defendant was charged with the production of an abortion,
    *held,* evidence of certain questions asked witness by defendant,
    relative to the matter was competent as one of the circumstances
    to be considered in connection with all the other circumstances
    tending to show defendant's connection with the alleged offense.

7.  EVIDENCE—CRIMINAL LAW—COMPETENCY OF WITNESS.—In a prose-
    cution for the production of an abortion, a witness was permitted
    to testify as to the condition and behavior of the prosecutrix after
    the commission of the alleged crime; where this witness himself
    testified that sometimes her mind was not exactly right, it was
    not improper to permit another witness to state that he knew her
    mental condition, and that he regarded her as a person of rather
    weak mind.

8.  EVIDENCE—COMPETENCY.—Evidence of declarations of one of two
    co-conspirators made before the offense was alleged to have been
    committed, and while the conspirators were contemplating the
    commission· of the offense, is admissible.

Appeal from Lonoke Circuit Court; *Thomas C. Trim-
ble,* Judge; affirmed.

STATEMENT BY THE COURT.

Appellant was committed March 28, 1915, to await
the action of the August, 1915, grand jury on a charge of
manslaughter. He gave bond for his appearance. On
April 19, 1915, an adjourned day of the regular Febru-
ary term of the Lonoke circuit court, a special grand jury
was called by G. W. Hendricks, judge of the third divi-
sion of the sixth district, with whom the regular judge

had exchanged circuit courts by agreement. The order directed the sheriff to summons a grand jury to assemble on the 20th of April, 1915, to investigate "charges against certain parties now in jail." The regular grand jury for the February term had been discharged on February 11, 1915, and the next regular grand jury of Lonoke county was due to sit in August, 1915.

The appellant was indicted jointly with Dr. P. D. Whitehead by the special grand jury on April 22, 1915, for the crime of manslaughter in the killing of the unborn quick child of one Mrs. Lizzie Pitts by "unlawfully and feloniously inserting a sharp metal instrument into the womb of Lizzie Pitts who was pregnant with a quick child, with the unlawful and felonious intent then and there to destroy said quick and unborn child, and did so destroy the same, said act not being necessary to save the life of the mother," etc.

After this indictment was returned the court adjourned, and in August, 1915, during a regular term of court, the appellant moved to quash the indictment on the ground that the special grand jury empanelled at the prior February term, under the charge of the court, could investigate only jail cases, and that the appellant at that time not being in jail the grand jury was without jurisdiction to return the indictment against him. The court overruled the motion to quash.

The appellant was put upon his trial at the August term and was convicted and sentenced to two years imprisonment in the State penitentiary.

On the 11th day of October, 1915, the circuit court of Lonoke County entered an order *nunc pro tunc* as of the 19th day of April, 1915, the said day being a regular day of the February term of the Lonoke circuit court. This order recites: "It appearing that other offenses have been committed and discovered during the sitting of this court, since the grand jury attending this court has been discharged. It is ordered and adjudged that the sheriff is hereby directed in pursuance of this order to forthwith summons a special grand jury from the inhabitants from

Lonoke county, qualified to serve as grand jurors at this term of court." And also an order *nunc pro tunc* showing that the grand jury was duly empanelled and charged as the law directs on the 20th day of April, 1915, the same being a regular day of the February term of court.

The appellant moved in arrest of judgment, and the court overruled his motion. He also moved for a new trial, which being overruled, he duly prosecutes his appeal to this court.

Other facts will be stated in the opinion.

*W. J. Waggoner* and *Trimble & Williams,* for appellants.

*Wallace Davis,* Attorney General and *Jno. P. Streepey,* Assistant, for appellee.

Wood, J., (after stating the facts). (1) Appellant contends that the grand jury, under the original orders of the court convening and empanelling the same, had authority only to investigate charges against parties confined in jail. The order of the court showed that the appellant was indicted not at a special term of the court called by the circuit judge in vacation, under the authority of sections 1532 *et seq.* of Kirby's Digest, but at a regular adjourned term of the circuit court, sitting in regular session, and under the authority of section 2219 of Kirby's Digest, which provides: "If any offense be committed or discovered during the sitting of any court after the grand jury attending such court shall have been discharged, such court may, in its discretion, by an order to be entered in the minutes, direct the sheriff to summon a special grand jury, * * * who shall be returned and sworn, and shall proceed in the same manner in all respects as provided by law in respect to other grand jurors."

The grand jury empanelled under the authority of the latter section would have been authorized to investigate any offenses which had been committed before the sitting of the regular term or during such term, but which had been overlooked by the grand jury first empanelled.

(2) The *nunc pro tunc* entries must be taken as reflecting the order which the court actually made respectively on the 19th and 20th days of April, 1915, concerning the venire facias for the special grand jury and the empanelling of the same. In the absence of any proof to the contrary, it must be held that the court made these orders and that same were not correctly entered by the clerk, and that the court therefore, at a subsequent term, had the orders correctly entered *nunc pro tunc.* This the court had the authority to do. *Lowe* v. *Hart,* 93 Ark. 584; *Lourance* v. *Lankford,* 106 Ark. 470. Moreover, the grand jury having been convened under the authority of section 2219, *supra,* would have had power, under its general jurisdiction, to inquire into and present all felonies which had been discovered after the regular grand jury had been discharged, which that jury had failed to investigate. See also, Kirby's Digest, § 2194.

The testimony on behalf of the State tended to show that the appellant had illicit intercourse with Lizzie Pitts which began in May, 1914, as a result of which she became pregnant in November, 1914. She notified the appellant of her condition, and testified that when she did so that appellant cursed and said that she was not going to have the child and disgrace him; that he came on the night of March 16, 1915, with Dr. Whitehead. She then relates that the appellant laid her down on his overcoat and held her while the doctor used metal instruments upon her, and that when the doctor got through he said, "I have used both of them at the same time and have stuck the little one through the child's head and guarantee that it will come sooner or later." She relates in detail what the doctor and appellant did and said during and after the alleged operation, which it is not necessary to set out.

It was shown that the prosecutrix was pregnant with a quick child. She had had three children by her husband, who was living away from the prosecutrix in Oklahoma. The prosecutrix testified that she always knew when she became pregnant by having missed her periods.

There was testimony by the sheriff to the effect that on the advice of the prosecuting attorney he went to the home of the prosecutrix at night a short time before the circuit court was to convene and that while there the appellant came; that the sheriff and two of his deputies were secreted in the house and heard a conversation between the appellant and the prosecutrix, the details of which it is unnecessary to set forth, but the effect of which was that the prosecutrix and the appellant went over the whole ground of the illicit intercourse that had obtained between them and which resulted in the pregnancy of the prosecutrix and in the killing of the unborn quick child by the appellant. That the appellant was endeavoring to have the prosecutrix go away in order that the prosecution against him might be suppressed; that he offered her money to leave and stay away until after the spring and August terms of the court; that the prosecutrix refused to go and that they indulged in criminations and recriminations, she upbraiding him for the manner in which he had treated her and he censuring her for preferring charges against him; that during the course of the conversation appellant admitted to having procured the doctor to perform the abortion, and that certain other things were true which the prosecutrix accused him of in the way of assisting the doctor in connection with the operation which resulted in the death of the child. The testimony of the sheriff was, in certain respects, corroborated by the testimony of his deputy. It is unnecessary to set out in detail all this testimony.

(3) The testimony of physicians, on behalf of appellant, who qualified as experts, was to the effect that it would have been impossible, in their opinion, to have produced the abortion and death of the unborn infant in the manner which the prosecutrix detailed. It is unnecessary to set out in detail all of this testimony. Suffice it to say the issue was one for the jury under the evidence.

While the appellant contends that the court erred in refusing to grant certain of his prayers for instructions,

none of the rejected prayers are set out, nor are any of the instructions which the court gave, and no error in the charge of the court is shown.

(4) The appellant complains because the court refused to permit him to ask the prosecuting witness if she had ever missed her periods before she was married. This testimony was not competent. It was too remote to throw any light upon the question as to whether or not the prosecutrix knew whether she was pregnant with a quick child at the time it was alleged that the appellant committed the offense charged.

(5) Appellant contends that the court erred in refusing to permit him to ask the prosecuting witness the following questions:

"Q. Now you state that you knew he would not do what he promised to do. A while ago you stated you were waiting to see whether he would do what he promised to do before you would tell it. Now state to the jury why you were waiting?

"Q. Did Mr. Dawson ever promise to marry you?

"Q. Did you intend to accept the money from Mr. Dawson to pay your transportation out to Texas, accept the money he deposited in the bank, and accept the payment of your board and still come back here and testify in this case?"

The only purpose appellant could have had in asking these questions was to test the credibility of the prosecuting witness and to show her motive and interest in testifying, but the record discloses that the court had permitted an exhaustive cross-examination of the prosecuting witness, fully sufficient to test her credibility and to show her interest in the prosecution and the motive which prompted her to give her testimony. The extent of the cross-examination was within the discretion of the court and that discretion was not abused by refusing to permit the witness to answer the questions propounded when considered in connection with all the other questions which the court had permitted and which the prosecuting witness had answered.

(6)   Exum Cobb, a witness on behalf of the State, testified over the objection of appellant that he had a conversation with appellant in January or February, prior to the alleged offense pertaining to medicine for the purpose of giving a woman for miscarriage. The witness testified that appellant came around there and wanted to know if the witness knew anything he could do in that case. He was asked what case and answered, "This Whitehead case, or whatever it is." Appellant said he was "in trouble." He didn't come right out and say, "but said enough for witness to guess it." Dr. Whitehead and appellant were jointly charged with committing the offense of killing the unborn quick child of Lizzie Pitts.

While the testimony is not very definite in identifying the questions asked by the appellant as relating to the miscarriage of Mrs. Lizzie Pitts, yet that is the only reasonable inference that could be drawn from the witness' testimony. The testimony was competent to go to the jury for what it was worth as one of the circumstances, to be considered in connection with all the other circumstances, tending to show appellant's connection with the alleged offense.

(7)   Mrs. N. J. Allen had testified on behalf of the appellant that she knew Mrs. Lizzie Pitts, who was her sister-in-law; that she asked her on March 19, 1915, what was the matter with her and that Mrs. Pitts stated that she had fallen while fixing a window shade and had been suffering pains ever since. On cross-examination the witness testified that sometimes her mind was not exactly right. Appellant complains because a witness, over his objection, was permitted to testify that he knew the witness Mrs. N. J. Allen nearly all of her life; that he knew her mental condition, and that he regarded her as a person of rather weak mind.

While this testimony was not competent, it was not prejudicial to appellant for the reason that the witness, Mrs. N. J. Allen, had herself testified that sometimes her mind was not exactly right.

(8)　J. J. Boyd testified that he was in the drug busi-
ness at Tomberlin; that Dr. Whitehead staid around
witness' place of business, and, over the objection of ap-
pellant, he was permitted to testify that early in the
spring, February or March, he had a conversation with
Dr. Whitehead with reference to doing some work for
Mr. Dawson; that Dr. Whitehead stated that Mr. Daw-
son had offered him $25 to do a piece of work for him
up in Lonoke.　Witness said to Dr. Whitehead, "If it is
anything that your profession forbids, you be careful
what you do."　This conversation was before Dr. White-
head was arrested.

This testimony shows clearly that the statement of
Dr. Whitehead was made to the witness before the al-
leged abortion was produced.　There was testimony tend-
ing to show that the appellant and Dr. Whitehead had
entered into a conspiracy to produce the abortion and
death of the child of Mrs. Pitts.　It was shown that appel-
lant had stated that he had paid Dr. Whitehead $25 to
do the work and that Whitehead had to do the work.
These declarations of Whitehead were made before the
offense was alleged to have been committed, and were
made while the alleged conspirators were contemplating
the commission of the offense.　The testimony was there-
fore competent.

There are no prejudicial errors in the rulings of the
court, and the judgment must therefore be affirmed.