(No. 21770.— ▮▮▮▮▮▮▮)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WALTER WALLAGE, Plaintiff in Error.

*Opinion filed June 22, 1933.*

D. L. Duty, and S. N. Finn, for plaintiff in error.

OTTO KERNER, Attorney General, WARD P. HOLT, State's Attorney, and J. J. NEIGER, for the People.

Mr. CHIEF JUSTICE ORR delivered the opinion of the court:

Cecil Curtis Phillips, a seven-year-old boy, was struck and killed by a passing automobile while he was walking along the concrete slab on State highway No. 142, in Marion county. The plaintiff in error, Walter Wallage, (herein referred to as the defendant,) was arrested shortly thereafter and indicted, tried and convicted of manslaughter by a jury in the circuit court of Marion county. Motions for a new trial and in arrest of judgment were overruled and judgment was pronounced upon the verdict. The defendant brings the record here for review by writ of error.

The defendant, in company with his wife, left Terre Haute, Indiana, on the afternoon of May 27, 1932, in an Oldsmobile coupe for their home in Herrin, Illinois. About six o'clock that evening the defendant took a drink of intoxicating liquor. Arriving in Salem, Illinois, he visited with friends for approximately two hours and there drank more intoxicants. Leaving Salem at ten o'clock that evening he drove south on Route 142 toward Mt. Vernon. Cecil Phillips, his two brothers, Robert, aged sixteen, and Raymond, aged fourteen, his older sister, Margaret, and a neighbor girl, Lillie Booher, aged fifteen, had spent the evening at the home of a farmer neighbor, John Felgenhaur. They left his place about ten o'clock and started for home, a distance of three-quarters of a mile. They traveled west to Route 142 and then began walking south on the concrete slab, all being east (or left) of its black center line. Cecil and Robert were walking on the slab, Robert being next to its edge and Cecil beside him, about three feet from its east edge. The other children were behind Robert and Cecil. Several cars passed the children before the fatal accident occurred. After going approximately a quarter

of a mile south on the slab Cecil was struck by an automobile coming rapidly from the north, which crossed over the black center line of the slab before reaching the boy. His body was thrown twenty feet by the force of impact, landing on the east shoulder of the road. The driver did not stop. Raymond ran home and told his parents of the accident while Robert remained with his stricken brother. The two girls brought Felgenhaur to the scene in his automobile about five minutes after the accident. Cecil was placed in Felgenhaur's automobile and taken to Dr. Schoonover, in Salem, who pronounced the boy dead. An examination showed that he had a broken neck and a compound fracture of the upper right arm but his body had suffered no particular mutilation.

News of the accident was quickly telephoned to officers in Mt. Vernon, who stopped and examined all automobiles coming into Mt. Vernon from the north over Route 142. The automobile of the defendant was stopped and an oval-shaped dent was discovered on the left front fender. When the defendant stepped out the officers smelled liquor upon his breath. He was bellicose, used abusive language to the officers and offered to fight them. Two police officers, a State highway patrolman, the sheriff and a deputy sheriff all testified that the defendant was drunk when his automobile was stopped, at about 10:40 o'clock. The officers testified that the defendant's automobile was a dark-colored coupe with light-colored wire wheels, the latter equipped with large, bright hub-caps. The front of the car carried a large, bright, single-bar bumper. The enamel had been removed in the dented part of the left front fender, disclosing the bright surface of the metal underneath. The automobile was taken to a garage, transparent shellac painted over the dented part of the fender to keep the bright metal surface from tarnishing, and a portion of the fender containing the dent removed and turned over to the officers of Marion county. The defendant was placed under arrest

and returned to Salem, where he was lodged in jail. The clothing worn by Cecil at the time he was killed, with the damaged portion of the fender, was taken by the State's attorney to a chemist in St. Louis, who later testified as an expert witness in behalf of the People. This chemist, H. E. Weideman, who had been official State chemist in Missouri for twenty-one years, took samples of the paint from the fender at the place where the dent was made, and samples of the paint from the shirt worn by the deceased boy at the time of the accident, examined and compared them, and testified that they were of similar color. To make these tests he removed a small portion of the shirt with scissors and brought it into court at the time the exhibits were presented. He examined the dented fender under a microscope and found lines where the paint had been partially rubbed off. He found that there were thirty-one of these lines to the inch. He also examined the shirt worn by Cecil, and stated that there were thirty-one raised threads per inch in the cloth of the shirt. He further found that there were scratches made on the fender a few inches below the dent. From an examination of these scratches under a microscope and an examination of the right suspender buckle in the back of the overalls worn by the deceased child he found that the scratches on the fender of the defendant's automobile were of the same contour, design and size as the buckle of the overalls worn by Cecil on the night of the accident.

The claim is made that the first two counts of the indictment do not describe the charge the defendant was called upon to face, with such reasonable degree of certainty as to be easily understood by the jury. Examination of the language of the two counts is sufficient to refute this allegation of error. No difficulty would be experienced by a layman in understanding the plain language of the counts, which charge the defendant with the unlawful, reckless and negligent driving of a motor vehicle on a public highway,

whereby it struck and mortally wounded Cecil Phillips, "of which mortal wounds, fractures and contusions [to use the language of the indictment] the said Cecil Curtis Phillips then and there languished a short time and on the same 27th day of May * * * there died." The case of *People* v. *Huff*, 339 Ill. 328, cited by defendant, is distinguishable from the present case, for there the indictment contained no statement that the deceased died as a result of the unlawful act charged against the defendant, while the wording of the indictment in the present case leaves no doubt as to what caused the death of Cecil.

Exception is taken to the trial court allowing the State's attorney in his opening argument to read to the jury the statute defining manslaughter. The argument is advanced that since *People* v. *Bruner*, 343 Ill. 146, the presiding judge is the only one to inform the jury as to the law. The action of the State's attorney would not warrant a reversal of the judgment, for the instructions of the court defined manslaughter in the language of the statute the same as read, and the defendant has failed to show any prejudicial error or harm arising from the incident.

An instruction tendered by the defendant saying why the wife of the defendant could not testify in his behalf was refused by the trial court. In this particular instance the defendant alleges the great importance of such an instruction because his wife was in the automobile with him. To support his point the case of *People* v. *Reno*, 324 Ill. 484, is cited. That was a murder case and the defendant was sentenced to death. The defense was an alibi, the defendant claiming to have been home in bed with his wife at the time of the killing. Here the defendant does not deny that he was near the scene of the accident at approximately the time it occurred, but his defense is that he did not hit the child with his automobile. Due to the material difference in the facts the principle in the *Reno case* involving proof of an alibi is not applicable to the case at

bar. Under the circumstances it would have been proper for the trial court to have given the instruction asked. It correctly stated the law and would have worked no hardship upon the State. In his closing argument counsel for the defendant took it upon himself to tell the jury that the wife was not, under the law, permitted to testify, so whatever curiosity the jurors might have had on that score was thereby satisfied. In any event, the court's refusal to give this instruction did not mislead the jury and would not constitute reversible error, as the record discloses ample evidence upon which to base the verdict of guilty.

The defendant objected to People's instruction No. 7, given in the following language:

"It is not necessary that the jury believe that every incriminating fact or circumstance in evidence before them has been proven beyond a reasonable doubt, but that it is sufficient if the jury believe from the evidence in the case that every material allegation in the indictment, in manner and form as therein charged, has been proven beyond a reasonable doubt."

The defendant contends that this instruction was prejudicial to his rights, because it would lead the jury to believe that they would be warranted in returning a verdict of guilty notwithstanding the most incriminating facts and circumstances in the case had not been proved beyond a reasonable doubt. This position is untenable, because the instruction plainly states that every material allegation in the indictment must be proved beyond a reasonable doubt, in manner and form as therein charged. Therefore it was not possible for a juror to be misled or the rights of the defendant prejudiced by the giving of this instruction.

Objection is next made to People's given instruction No. 5, which is as follows:

"The court instructs the jury that involuntary manslaughter occurs without intention, will or motive to commit the crime, and that, to convict, it is not necessary to

prove there was any motive to commit the crime, and that to convict it is not necessary to prove there was any motive in the mind of Walter Wallage, the defendant, at the time to kill or injure Cecil Curtis Phillips."

The defendant charges this instruction with assuming that the defendant did kill the child. An examination of this instruction shows that no such assumption is to be fairly drawn from it. It states to the jury that involuntary manslaughter occurs without intention or motive, and in this case it is not necessary to prove there was any motive in the mind of Walter Wallage to kill Cecil Curtis Phillips. This instruction does not say Wallage did kill, and from this instruction it cannot be said, as the defendant contends, that the jury would believe that Wallage did actually kill Cecil Curtis Phillips or that the court believed the defendant guilty. The court gave seven instructions for the People and eleven for the defendant, and each instruction must be considered as one of a series. If the instruction in question had been standing alone it would have been subject to criticism for lack of clarity, but when considered as one of a series, as it must be, no prejudice against the defendant is seen in its language. We have examined all the instructions given, and as a whole they fairly and clearly announced the law applicable to the crime of involuntary manslaughter.

The defendant contends that the evidence produced was not sufficient to satisfy the jury, beyond a reasonable doubt, that the automobile which struck and killed the child was driven by him. There was no denial that Cecil Phillips was killed by an automobile at the place and time alleged. The sole question was whether the automobile driven by the defendant was the one that struck Cecil. The defendant does not deny that he was driving south on Route 142 and that he passed the place where the accident occurred at a time close to the hour of the accident. Testimony of the children with Cecil described the automobile as dark-colored,

with a closed body and light-colored wheels. The testimony of the expert chemist, Weideman, was chiefly relied upon by the People to identify the automobile. This witness testified that he clipped from the shirt of Cecil a small portion of cloth which had on it some paint. This paint and a sample of paint from the fender of defendant's car were dissolved in alcohol contained in separate containers. The colors of the two solutions were similar. The witness related that close to the dented place on the fender he noticed a series of line scratches, all parallel. Examination under a microscope disclosed that there were thirty-one parallel lines per inch. Similar examination of the cloth under the paint stain disclosed that there were thirty-one raised threads per inch. The conclusion of this expert witness was that the thirty-one parallel marks on the fender were made by the violent contact of a piece of woven cloth that had the same number of threads as the shirt worn by Cecil had. Testifying further, this witness said that he found upon the fender, in a position close to the thirty-one lines, scratches differing in character from the ones just described. His conclusion was that these scratches had been made by a hard substance, as they were wider apart and deeper than the other scratches. Looking at the suspender buckles on the overalls worn by Cecil the night he was killed the witness found thereon a figured design. Rubbing this buckle forcibly against the fender the witness found that marks with certain spacings were produced similar to those he found upon the fender. The buckle, according to this witness, showed that it had been rubbed violently against a hard surface covered with dark paint.

The defendant accounted for the dent in the fender by saying that a truck had backed into his automobile in Minneapolis some four weeks before. This testimony was weakened by the testimony of A. C. Lyerla, a defense witness, that he saw this dent in the fender of defendant's automobile before it was driven to Minneapolis. Two other

witnesses stated that they had noticed the dent in the fender some weeks before the accident.

No error was committed in allowing in evidence the shirt and overalls of the deceased child or that part of the fender containing the dent and the scratches made by the cloth and the overall buckle. The defendant charges a substantial change in the condition of those exhibits, but this is not substantiated by the record. The piece of cloth taken from the shirt was produced in court along with the buckle from the overalls. The dent in the fender was covered with transparent shellac by order of the sheriff in order that the bright metal surface opened up by removal of the paint covering it would not corrode. The clipping of the small piece out of the shirt, the removal of the buckle and the shellacking of the fender did not constitute a substantial change in the condition of those exhibits.

The defendant also objected to the introduction of evidence of his intoxicated condition, on the ground that such condition was not contemporaneous with the commission of the crime charged or so connected with it as to illustrate its character. The distance from Salem to Mt. Vernon over the road taken by the defendant was about twenty miles. Accepting his version of the speed at which he was traveling, thirty miles per hour, it took him about five minutes to drive to the place of accident from Salem and thirty-five minutes from there to Mt. Vernon. He admitted drinking liquor in Salem, and the evidence is conclusive that he was intoxicated when he reached Mt. Vernon. The only reasonable conclusion the jury could have reached was that the defendant was intoxicated at the time he passed the place where Cecil Phillips was killed. This conclusion could also be sufficiently based upon the evidence that the defendant was intoxicated when his automobile was stopped on the northern outskirts of Mt. Vernon. The intoxicated condition of the defendant in Mt. Vernon was nearly contemporaneous with the commission of the crime charged and

served so well to illustrate his condition at the time it was charged his automobile hit Cecil Phillips that such evidence was admissible upon the ground of showing an act subsidiary to the main act or event. See 1 Bishop on Crim. Proc. secs. 1085, 1086.

The defendant took exception to a remark of the State's attorney in his closing argument in which he mentioned a similar accident where a child was hit by an automobile without leaving thereon any blood, skin or hair. This statement was improper, even though directed as an answer to a previous argument by defense counsel also beyond the range of the evidence. The court promptly sustained an objection by the defendant's counsel to the State's attorney's remark and the offense was not repeated or persisted in. Under these circumstances the incident did not constitute reversible error.

According to the defendant the *corpus delicti* was not sufficiently proved. It is conceded that the death of Cecil Phillips was adequately shown but denied that the death was established by competent evidence, beyond all reasonable doubt, to have occurred through the criminal agency of the defendant. In this connection the defendant directs our attention to the alleged erroneous rulings of the trial court in allowing the expert witness Weideman, over objections, to describe and draw conclusions from the exhibits he had examined. Subjects of testimony are divisible into two classes: those on which sufficient experience is possessed by the normal adult in the community, and those upon which a sufficient experience is possessed by those who have followed some special occupation, trade, art or science. To the latter class belong expert witnesses. (Wigmore on Evidence, secs. 556, 559.) If the subject of testimony is one requiring an expert witness, the same special experience which qualifies the witness is deemed also to supply as a basis for inferences some data not possessed by the jurors

as persons of only ordinary experience. Under such circumstances the inferences or opinions of expert witnesses are always admissible, whether based in part on the condition of a corporal object which can be shown to the jury or in part upon data observed by the witnesses themselves and capable of being adequately stated to the jurors. (Wigmore on Evidence, secs. 1918-1924.) The expert witness Weideman did not usurp the functions of the jury by giving his opinion as to the ultimate fact to be found by the jury—*i. e.,* Did the automobile of defendant, while driven by him, strike and kill Cecil Phillips at the time, place and in the manner set forth in the indictment? All that Weideman testified to was the result of his experiments. Based upon those experiments his opinion was that certain marks on the fender were produced by cloth and by metal, and that those marks were close—within an inch and a half of each other. His further opinion was that the marks produced upon the fender by cloth were spaced exactly the same as the threads in the boy's shirt, and that the marks produced by metal were made by the overall suspender buckle, because the scratches on the fender were spaced in exact conformity with the design on the buckle. The trial court did not commit error in admitting the testimony of this witness.

It is quite evident that the verdict of the jury was the result of dispassionate consideration of the testimony. There is sufficient evidence to warrant a conviction and the verdict is not palpably contrary to the weight of the evidence. Under these circumstances, and where errors of law have not occurred which would warrant a reversal, this court will not reverse the judgment by substituting its judgment for that of the jury. (*People* v. *Schoop,* 288 Ill. 44; *People* v. *Grosenheider,* 266 id. 324; *People* v. *Chaney,* 342 id. 175; *People* v. *Flanagan,* 338 id. 353.) The instructions complained of have been discussed, and as a series were fair to the People and to the defendant. The jury

were warranted, from the evidence, in finding the defendant guilty.

For the reasons assigned the judgment of the circuit court of Marion county is affirmed. *Judgment affirmed.*