DEATHERAGE *v.* STATE.

Crim. 4050

Opinion delivered September 27, 1937.

514

*H. A. Northcutt* and *Oscar E. Ellis,* for appellant.

*Jack Holt,* Attorney General, and *John P. Streepey,* Assistant, for appellee.

BUTLER, J. This proceeding was instituted by a charge of murder in the first degree contained in an information filed by the prosecuting attorney of the Baxter circuit court under authority of Amendment No. 22 to the Constitution of Arkansas and act No. 160 of the Acts of 1937 in aid thereof. At the trial the defense offered was that the appellant was an officer, acting at the time of the killing in a criminal case, and that he had one Cunningham in custody, who there and then assaulted and resisted him, and that while Cunningham was in the commission of such acts appellant shot and killed him in his necessary self-defense. Appellant was convicted of the crime of involuntary manslaughter.

The errors assigned and argued for reversal will be considered in the order presented by appellant's counsel in their brief.

The first assignment of error relates to the testimony of J. J. McCarthy who was a witness on behalf of the state. At the trial, articles of clothing, purported to have been worn by the deceased at the time he was killed, were introduced before the jury by the sheriff of Baxter county, who identified the same as clothing he had procured from the undertaker's establishment after it had been removed from the body. This clothing was sent by the sheriff through the mails to the Bureau of Investigation of the Department of Justice in Washington, D. C. After a time it was returned by the same means to the sheriff and by him introduced as the same clothing which he had transmitted to Washington. The

witness, McCarthy, testified that he was employed by the Federal Bureau of Investigation and that he received some clothing from the sheriff of Baxter county which he examined; that he found certain holes in the clothing. The witness qualified as a chemist and expert in firearms and stated that these holes were bullet holes and, from the condition of the clothing and some discolorations which he observed and examined, he concluded these were powder marks and that the holes were the points of entrance of the bullets. Objections were made to the introduction of this testimony and exceptions properly saved to its admission by the trial court. At the conclusion of the examination in chief, counsel for appellant moved to exclude the testimony from the consideration of the jury, which motion was overruled and the exceptions saved.

It is contended that this testimony was inadmissible (a) because there was no proper identification of the clothing as that taken from the body of the deceased, and (b) that it was not shown that the clothing was in the same condition when examined by McCarthy as it was when removed from the body. These specific objections were not made in the trial court, and when counsel was asked by the trial judge if the motion to strike was made for any special reason, none was given save the general objection that "it is incompetent and irrelevant." We deem it unnecessary to discuss the sufficiency of the identification, for if the testimony was erroneously admitted no prejudice resulted to the defendant, the reason being that it related to no issue in the case. The general effect of the testimony is that the slayer was in close proximity to the deceased at the time the fatal shots were fired. The appellant testified that the deceased, immediately before the firing, grasped him by the throat, backed him against a wall and he there and then fired the shots because of the assault and under the belief that he was in imminent peril of receiving great bodily harm or of losing his life, and that the shots were fired in necessary self-defense. The question, then, is why the shots were fired and whether this

act on the part of appellant was justified, and not at what distance the shots were fired or on what particular part of the body the wounds were inflicted, there being no dispute as to this. While the testimony of McCarthy may not have been competent, a point we find it unnecessary to decide, we agree with appellant that it was immaterial. We are unable to perceive how it could have helped the case of the state or harmed that of defendant. Accordingly, the case cannot be reversed because of this error. *French* v. *State,* 187 Ark. 782, 62 S. W. (2d) 976.

The second, third and fourth assignments of error are so related that they may be considered together. These are that the trial court erred in refusing to sustain appellant's instruction for a directed verdict, in overruling instruction No. 1 requested by the appellant, and that the evidence was insufficient to sustain the conviction. The undisputed evidence is to the effect that at a time when appellant was a peace officer, he arrested Cunningham while the latter was drunk and disorderly and placed him in the county jail. This appears to have occurred late in the evening or during the night. After Cunningham had been placed in jail, a fire broke out in the jail and the prisoners were brought out until it was extinguished. Then appellant returned Cunningham to the jail and, as he was putting another prisoner back, Cunningham came out again. The appellant again took Cunningham into the jail and while inside and beyond the sight of those on the outside, a commotion was heard by them. Appellant was heard to exclaim, "Quit, quit," and again, "He's choking me to death," and, immediately after the last exclamation, the shots were heard.

One witness testified as to having seen a part of the struggle between appellant and Cunningham and stated that he heard Cunningham say, "I'll burn the damn thing down," at the same time reaching out and grabbing appellant around the neck. After the shooting a shirt collar was found in the jail which was identified as that of the appellant who testified that it had been

torn from his shirt in the struggle. After the firing, appellant came out of the jail rubbing his throat, which, however, was found free from bruises, lacerations or other apparent injury when examined by a physician the next morning.

Instruction No. 1, requested by the appellant and refused by the court, was to the effect that if the jury found appellant was an officer and had arrested deceased and was committing him to jail or attempting to keep him there after his commitment and was assaulted by the deceased, appellant was justified in killing him. It is argued that it was error of the trial court to have refused this instruction and, further, that as the instruction is based upon undisputed facts, the evidence is not sufficient to sustain the conviction. This contention is based upon the language of § 2376 of Crawford & Moses' Digest which provides: "If an officer, in the execution of his office in a criminal case, having legal process, be resisted and assaulted, he shall be justified in killing the assailant." This section, however, must be considered and construed with the whole of chapter No. 44 of the Revised Statutes, relating to the law of homicide, of which it is a part. As part of this chapter, one of the grounds for justifiable homicide is defined as a killing in necessary self-defense. Crawford & Moses' Dig., § 2369. Also, it is declared, that a bare fear of the offenses to prevent which the homicide is alleged to have been committed shall not be sufficient to justify the killing, but that they must be such as to excite the fears of a reasonable person and that the slayer really acted under their influence. *Id.*, § 2374. Again, the declaration is made that if the killing be in the prosecution of a lawful act, done without due caution and circumspection, it shall be manslaughter. *Id.*, § 2356. .

One who slays another under the honest belief that his life or limb is in imminent peril and commits the act to prevent the apprehended danger is in the exercise of a lawful act. Merely because of this, however, he is not to go free unless he acted with due caution and circumspection, for if he did not he is guilty of manslaughter.

*Ringer* v. *State,* 74 Ark. 262, 85 S. W. 410; *Scott* v. *State,* 75 Ark. 142, 86 S. W. 1004; *Bruder* v. *State,* 110 Ark. 402, 161 S. W. 1067; *Smith* v. *State,* 59 Ark. 132, 26 S. W. 712, 43 Am. St. Rep. 20.

"Although," as it has been said, "officers of the law are 'clothed with sanctity' and 'represent its majesty,' " their right in resisting an assault can rise no higher than that of one in the exercise of the right of self-defense, a right which existed before the promulgation of any law, one inherent to man in the nature of things. Therefore, the same rule applies to officers in resisting an assault and in exercising a lawful act under the circumstances; that is to say, before taking human life, they must at least act with due care and circumspection.

In the instant case, the officer was not assaulted by a felon or one charged with that offense, but by one who had been arrested and committed for misdemeanor, and, in resisting the assault made upon him, the officer could be justified only when it appeared reasonably necessary to him to kill in order to save his own life or to prevent infliction upon him of great bodily harm. The slaying must have been made in the honest belief that it was necessary and not with any other motive. This court, in the case of *Thomas* v. *Kinkead,* 55 Ark. 502, 18 S. W. 854, 15 L. R. A. 558, 29 Am. St. Rep. 68, in speaking of a misdemeanant (quoting page 509), said: "In making the arrest or preventing the escape, the officer may exert such physical force as is necessary on the one hand to effect the arrest by overcoming the resistance he encounters, or, on the other, to subdue the efforts of the prisoner to escape; but he cannot in either case take the life of the accused, or even inflict upon him a great bodily harm, except to save his own life or to prevent a like harm to himself." This doctrine has been followed in subsequent cases, among them being *Edgin* v. *Talley,* 169 Ark. 662, 276 S. W. 591, 42 A. L. R. 1194, and *Stevens* v. *Adams,* 181 Ark. 816, 27 S. W. (2d) 999.

Instruction No. 1 requested by the appellant was properly refused. Its effect, if given, would have been

to separate the section of law thought to be authority for its request from the remainder of the law dealing with homicide, and give to its provisions a literal interpretation which would justify an officer in slaying one under his arrest without regard to the slight degree of resistance and the feebleness of the assault.

Appellant admitted the killing and sought to justify his act under the plea of necessary self-defense. While he testified that the slaying was the result of an apprehension on his part that his life was in peril, no circumstances appear in the proof to corroborate him save the testimony of certain witnesses to the effect that he was heard to make certain exclamations, and the collar found upon the floor which appellant claimed was torn from his shirt during the struggle. No evidence appears as to the relative size and strength of the parties to the rencounter or marks of violence found upon the person of the appellant, although an examination of him was made by a physician within a few hours after the homicide. Unless it otherwise appears, it was the duty of the appellant to prove circumstances which would excuse or justify the killing, § 2342, Crawford & Moses' Digest; and the circumstances in proof are such that from them the jury might have reasonably found that, while the homicide might have otherwise been justifiable, proper restraint was not exercised by the appellant, or that he acted without due caution and circumspection in its commission.

It is next contended that the trial court was without jurisdiction because the information of the prosecuting attorney, though authorized by the Amendment to our Constitution and the act of the Legislature, *supra,* was in violation of Amendment No. 5 to the Constitution of the United States. In the case of *Penton* v. *State, ante,* p. 503, 109 S. W. (2d) 131, handed down this day, we have decided this contention adversely to the appellant, the reasons for which are set out in that case.

It is finally contended for reversal that the record fails to show that the jury was selected and sworn as required by law. The specific charges as to insufficiency of the record are (1) that the record does not show the names of the seven jurors from the regular panel who

were a part of the trial jury; (2) and (3) that it does not show the names of the special jurors who made up the remaining five, and (4) that the jury, as selected, is not shown by the record to have been sworn before examination as to their qualifications, nor to have been sworn to try the case.

The first, second and third objections are disposed of in the cases of *Spear* v. *State,* 184 Ark. 1047, 44 S. W. (2d) 663, and *French* v. *State, supra.* It does not. appear what examination, if any, was made of the jury on their *voir dire,* or that any juror was challenged, or that appellant had exhausted his challenges before the jury was completed. Therefore, no prejudice is shown which would call for reversal. See cases cited, *supra.*

In the case of *French* v. *State, supra,* as in the case at bar, complaint was made because the record did not reveal the names of all the bystanders who were summoned to complete the jury. But there, as here, it did show the names of all the jurors accepted in the case. Section 6378 of Crawford & Moses' Digest was cited to sustain the contention made that the failure noted constituted error. That section, in part, provides: "The record shall contain the names of all bystanders." We there decided that this section was directory and, in the absence of any showing of prejudice, a failure to comply with it was an irregularity about which no complaint could be made.

The appellant is in error as to the fourth contention. The record affirmatively shows that the jurors were examined and accepted by both parties, that each of the twelve named in the record had been sworn, examined and found competent by both plaintiff and defendant, and that thereupon "said jury was by order of the court sworn and impaneled as the jury to try this cause."

No prejudicial error appearing, the judgment of the lower court is affirmed.