BARTLEY AND JONES *v.* STATE.

4429                           199 S. W. 2d 965

Opinion delivered January 20, 1947.

Rehearing denied February 24, 1947.

*Marcus Fietz, W..J. Stone* and *J. L. Taylor,* for appellant.

*Guy E. Williams,* Attorney General, and *Arnold Adams,* Assistant Attorney General, for appellee.

MINOR W. MILLWEE, Justice. Information filed by the prosecuting attorney in the circuit court of the Western District of Clay county charged appellants, Eugene Bartley and Harlan Jones, with murder in the first degree for unlawfully killing Fred Ivins on June 13, 1945, by "shooting, beating and drowning" him. J. B. Bartley, father of appellant, Eugene Bartley, was jointly informed against with appellants, but was granted a severance under § 3976 of Pope's Digest. The separate trial of appellants resulted in a verdict and judgment finding them guilty of murder in the second degree and fixing their punishment at seven years in the penitentiary from which is this appeal.

At the conclusion of all the testimony, appellants requested a directed verdict of not guilty, which was refused. The chief contention of appellants for reversal of the judgment is that the evidence is insufficient to sustain the verdict.

When viewed in the light most favorable to the State, the testimony discloses the following facts:

J. B. Bartley resided in the Delaplaine community in northwestern Greene county, while Fred Ivins lived across the county line in southwestern Clay county about 3 miles from Bartley. Appellant, Harlan Jones, who was 19 years old in 1945, worked for and made his home with J. B. Bartley and his son, Eugene Bartley, who was 17 years of age. Fred Ivins, J. B. Bartley and others had livestock running on the range in the lowlands of the vicinity in June, 1945, when backwater from an overflow of Black River covered these lands with the exception of a few scattered ridges.

On June 13, 1945, Fred Ivins and two neighbors, Dolph Crouch and Sig Young, were engaged in removing hogs from the high water area of southwestern Clay county. The hogs were caught and tied on the high ridges and removed by boats. Ivins was using his own boat and the other two were using Crouch's boat. They finished loading the hogs from "Turkey Pen Ridge" about 5 p. m. when they separated, Crouch and Young

going south in their boat, while deceased started north toward his farm on Dalton Island about three quarters of a mile away. They had been separated about 10 minutes, and Crouch and Young had proceeded a distance of about 100 yards, when they heard six or seven rifle shots. There were two series of shots which sounded differently. They heard a dog "holler" about the fourth or fifth shot.

After the shooting, they heard Ivins say, "What did you shoot me for?" and J. B. Bartley answered, "I thought you were a squirrel." Then Ivins said, "You get out from behind that tree and go on off and I will not bother you." Ivins then called, "Oh, Dolph," but Crouch did not answer, and Ivins said, "Oh, Dolph, come and get me." Young and Crouch both testified positively that the voices were those of Ivins and J. B. Bartley. They heard no other noises except the occasional squealing of the hogs. They heard no splashing of the water and did not hear Ivins threaten to kill anyone. They proceeded home with their load of hogs at Young's suggestion and did not respond to the call for assistance made by Ivins.

The following day the sheriff of Clay county questioned appellants who voluntarily told the sheriff that they had a fight with Ivins and where his body would be found. His best recollection was that appellants told him they killed Ivins.

A group of neighbors living in the vicinity went to the scene of the encounter on the morning of June 14th, where they found deceased's boat in which there were several hogs, a .22 caliber automatic rifle and a pair of boots belonging to deceased. Deceased's hat and boat paddle were floating within 15 or 20 feet of his boat. The sheriffs of Greene and Clay counties were summoned. The body of Ivins was recovered about 4:30 p. m. a short distance from the east edge of Turkey Pen Ridge in water variously estimated at seven to ten feet in depth. A large cypress log was found afloat and lodged in some brush and trees about 60 yards from the point where Ivins, Young and Crouch loaded their hogs.

The log was covered with moss·and debris and there were indications that it had been trampled upon. A dead dog belonging to J. B. Bartley was found about 25 feet from the log.

The funeral director, who prepared the body for burial, testified that one bullet had entered the right buttocks about the center of the hip pocket area and had emerged at the upper juncture of the two pelvic bones. Another bullet had entered the back part of the right arm, emerged from the arm and reëntered above the ribs but below the skin. There were bruises about the face and throat. There was one bruise on the right side of the throat about the size of a man's thumb and three other dark marks on the left side of the throat. There was also a slight swelling about the center of the base of the skull. Blood was running from the nose, mouth and ears of deceased and parts of his body had been eaten by turtles or crawfish.

An open knife was found clenched in the right hand of deceased and his .22 caliber automatic rifle, which held 16 shells, had 12 shells in it. Dolph Crouch and Sig Young testified that Ivins had fired the gun twice during the day and they had not seen him reload it.

There was evidence of prior trouble and ill feeling between J. B. Bartley and deceased. In 1943, Ivins was convicted on an assault to kill charge for shooting J. B. Bartley. On June 12, 1945, the day before Ivins met his death, J. B. Bartley and a neighbor were driving their cattle on or near Ivins land when the latter ordered them off his property at the point of a gun and warned them to keep their cattle off his land.

Appellants testified in their own behalf and there were several discrepancies between their testimony at the trial and that given by them at a *habeas corpus* hearing held soon after the death of Ivins. According to their testimony, J. B. Bartley had sent them to look for hogs and they were in their boat near Turkey Pen Ridge when they were suddenly attacked by Ivins who was concealed

in some bushes about 20 feet away. Ivins first shot through the hat of appellant, Eugene Bartley, and then shoved his boat toward them firing the automatic rifle and cursing and threatening to kill them as he did so. They also testified that Eugene Bartley fired two shots from his .22 caliber rifle at Ivins as the latter advanced upon them. After forcing Eugene Bartley to place his gun and the shotgun of Harlan Jones in his boat, Ivins then shot Eugene in the hip and turned his gun to shoot Jones who grabbed Ivins' gun and threw it back in the boat as the three were thrown into the water when appellants' boat capsized. Appellants also testified that they were both attacked by Ivins in the struggle that ensued in the water in which Jones was struck in the chest with a knife by Ivins. After Jones had pushed Ivins away from him several times, the latter went down in the water and did not come up. They did not choke or beat Ivins, and J. B. Bartley was not with them.

It is earnestly insisted by appellants that their testimony to the effect that deceased was the aggressor and attacked, stabbed, and shot them is undisputed and that the testimony is therefore insufficient to support the verdict of the jury. The testimony on behalf of the State tends to show that deceased was shot in the arm and buttocks from the rear. This testimony is inconsistent with appellants' version of the difficulty and the jury would be warranted in concluding that Ivins could not have been shot from the rear if he was advancing toward appellants when Eugene Bartley shot at him twice, as appellants testified. Appellants' testimony was also inconsistent with that of Dolph Crouch and Sig Young as to who provoked the difficulty that resulted in Ivins' death, and the jury were warranted in believing that all the circumstances in evidence negatived the idea that deceased was the aggressor and met his death in an unlawful attack upon appellants. The jury being the exclusive judges of the credibility of the witnesses, and the weight to be given their testimony, were not required to accept the testimony of any witness as true. They might

accept one part of the testimony of any witness and reject another part.'

We think the physical facts and circumstances surrounding the death of Ivins, the previous trouble between Ivins and J. B. Bartley, the testimony of Crouch and Young concerning the shots and statements heard by them, and the prior contradictory statements of appellants provided. substantial evidence which was sufficient to support the verdict finding appellants guilty of murder in the second degree.

Appellants next insist that the court erred in giving instruction No. 8. This instruction is in the language of the statute (§ 2968, Pope's Digest) which reads as follows: "The killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve on the accused, unless by the proof on the part of the prosecution it is sufficiently manifest that the offense committed only amounted to manslaughter, or that the accused was justified or excused in committing the homicide." It is sufficient to say that no objection was made to the giving of the instruction and no exceptions saved. An assignment of error is unavailable on appeal, even in capital cases, unless objection is made in the trial court. *Baine v. State,* 132 Ark. 416, 200 S. W. 999; *Sullivan v. State,* 161 Ark. 19, 257 S. W. 58; *Lesieurs v. State,* 170 Ark. 560, 280 S. W. 9.

On cross-examination of Eugene Bartley the State attempted to show that deceased was an expert marksman and Bartley was permitted to answer the question as to why deceased was unable to kill appellant with an automatic rifle when shooting at him from a distance of 20 feet or less as Bartley had testified. We have often held that the scope and extent of the cross-examination of a witness is largely discretionary with the trial court, and unless that discretion is abused, no reversible error is committed. *King v. State,* 106 Ark. 160, 152 S. W. 990; *Dawson v. State,* 121 Ark. 211, 180 S. W. 761; *Peterson v. Jackson,* 193 Ark. 880, 103 S. W. 2d 640. A general objection only was made to the question which tended to estab-

lish a contradiction of the defense offered by the appellant, Eugene Bartley, and to impeach the credibility of his testimony. We think there was no abuse of the trial court's discretion in overruling appellants' general objection to this question.

It is also insisted that whether deceased was an expert marksman was entirely a collateral matter and should have been concluded by the answer of appellant. Eugene Bartley, but that the state was erroneously permitted to recall the deceased's son and prove by him that deceased was an expert marksman. We have examined the record and find no objection made by appellants to this rebuttal testimony, and this assignment of error was therefore waived.

The State was permitted over the objection of appellants to introduce the trousers worn by deceased at the time of his death. The clothing of deceased had been in possession of the witness, John Crouch, who testified that they had to cut and rip the clothing from the body of deceased since rigor mortis had set in. He testified that a part of the front of the trousers had been removed since they had been taken from the body of deceased, and while the clothing was in Crouch's truck which was parked near the courthouse during the trial. The Kentucky court in *Mann* v. *Commonwealth,* 226 Ky. 296, 10 S. W. 2d 1094, held the clothing of deceased admissible in evidence under circumstances similar to those in the instant case. And, in *People* v. *Wallage,* 353 Ill. 95, 186 N. E. 540, it was held that the shirt of deceased from which a piece of cloth had been taken for experimental purposes was, nevertheless, admissible in evidence.

If it be asumed that the evidence was erroneously admitted because the garment was not in substantially the same condition as when removed from the deceased, we think no error prejudicial to appellants resulted therefrom. This court has repeatedly held that criminal cases will not be reversed for nonprejudicial errors. *Middleton* v. *State,* 162 Ark. 530, 258 S. W. 995; *French* v. *State,* 187 Ark. 782, 62 S. W. 2d 976. In *Deatherage* v. *State,* 194

Ark. 513, 108 S. W. 2d 904, the clothing worn by deceased was introduced and the effect of its introduction was to show that the slayer was in close proximity to deceased at the time the fatal shots were fired. It was there held that it was harmless error to permit the introduction of the clothing without proper identification, since there was no dispute as to the location of the wounds and the distance from which the shots were fired. Apparently the only purpose for which the trousers were offered in evidence in the instant case was to show the location of the bullet hole in deceased's right buttocks. Several witnesses testified as to the location of this hole on the body of deceased and there was no dispute in the evidence on this point. Under these circumstances, the error, if any, in the admission of the trousers was harmless and does not call for a reversal of the case.

We have carefully examined the other alleged errors set out in appellants' motion for a new trial, most of which relate to the giving of instructions and admission of testimony to which no objection was offered at the trial. We find these assignments to be without merit. The trial court fully and fairly instructed the jury on reasonable doubt, credibility of witnesses and appellants' plea of self defense.

We find no prejudicial error, and the judgment is affirmed.