Harold Eugene ROGERS *v.* STATE of Arkansas

CR 74-59                                    582 S.W. 2d 7

June 11, 1979
(In Banc)

946

948

*Howard & Jameson,* by: *George Van Hook, Jr., Nathaniel R. Jones* and *James I. Meyerson,* New York; and *George Howard, Jr.,* for petitioner.

No brief for respondent.

## PER CURIAM

Petitioner Harold Eugene Rogers was convicted by a jury of rape and was sentenced to life imprisonment in the Arkansas Department of Correction. We affirmed, *Rogers v. State,* 257 Ark. 144, 515 S.W. 2d 79 (1974), and the Supreme Court of the United States denied certiorari, *Rogers v. Arkansas,* 421 U.S. 930 (1975). Several years later petitioner filed a petition for writ of habeas corpus in the United States District Court, Eastern District of Arkansas, alleging, *inter alia,* the allegations contained in his present petition filed in this Court. The district court dismissed with prejudice petitioner's claims attacking his conviction; however, the court reserved its ruling regarding petitioner's claim attacking his sentence, pending the outcome of his application to state courts, for failure to exhaust state remedies. 28 U.S.C.A. § 2254 (c). On April 13, 1979, petitioner filed his present petition for permission to proceed in circuit court under Criminal Procedure Rule 37 for postconviction relief in

this Court presenting a two-pronged argument attacking the validity of his sentence. Petitioner invokes jurisdiction under Rule 37.2(a), *Rules of Criminal Procedure* (1976) and the opinion and order of the United States District Court dated March 7, 1979, which is attached as an exhibit. Petitioner's application for postconviction relief is denied for the reasons hereinafter discussed.

On December 18, 1978, we amended Rule 37.2, *Rules of Criminal Procedure*, by adding the following:

(c) A petition claiming relief under this rule must be filed in circuit court or, if prior permission to proceed is necessary as indicated in paragraph (a), in the Supreme Court within three (3) years of the date of commitment, unless the ground for relief would render the judgment of conviction absolutely void.

The basis for the promulgation of this rule at once becomes obvious upon the filing of the present petition. The information recites that the rape occurred on October 31, 1972. Petitioner was sentenced and committed on November 5, 1973. More than five years have passed since petitioner's commitment, and it has been almost four years to the day since the United States Supreme Court denied certiorari, *Rogers* v. *Arkansas, supra.* We take judicial notice of the fact that the circuit judge who presided over petitioner's trial, Honorable Paul Wolfe, is deceased and, therefore, is unavailable to testify regarding petitioner's allegations. If a grave injustice was committed, why did petitioner wait so long to file his petition? Petitioner is not claiming relief under some new law that has been applied retroactively but his allegations could easily have been raised five years ago in a motion for new trial. He could have filed his petition for postconviction relief as soon as the mandate affirming the judgment was issued by this Court. We would be hesitant to encourage the practice of vacating judgments upon the basis of allegations relating to matters that cannot be defended against, not because of substance or truth but because witnesses are unavailable, memories are faulty and, in some cases, records are destroyed, when a petitioner waits an *unnecessary* and *unexplained* length of time to file his petition.

However, due to the fact that petitioner's allegations can be disposed of by reading the record and our original opinion, *Rogers v. State, supra,* and applying existing state law, we address the substance of the allegations. However, we question the invoking of jurisdiction in this Court on the basis of the order of the United States District Court.

We also note at the outset that the record discloses that petitioner was represented at the trial, which extended over a seven day period, by three capable and competent attorneys, two of which continue to represent petitioner in this proceeding. The transcript contained 951 pages.

Petitioner first alleges that, prior to sentencing, the trial court failed to afford his right to allocution, as provided in Ark. Stat. Ann. § 43-2303 (Repl. 1977). We disagree.

Ark. Stat. Ann. § 43-2303, *supra,* provides:

> *Proceedings before pronouncing judgment.* — When the defendant appears for judgment, he must be informed by the court of the nature of the indictment, his plea and verdict thereon, if any; and he must be asked if he has any legal cause to show why judgment should not be pronounced against him.

We have held that failure of the trial court to afford the right of allocution is error. *Tate v. State,* 258 Ark. 135, 524 S.W. 2d 624 (1975) and *Smith v. State,* 257 Ark. 781, 520 S.W. 2d 301 (1975). However, in this case petitioner was afforded the opportunity to address the court before sentencing, and we find the procedure used was in substantial compliance with Ark. Stat. Ann. § 43-2303, *supra.* After the jury returned its verdict, the following transpired:

> THE COURT: Mr. Howard, Mr. Myerson, and Mrs. Miller, what I have in mind at this moment is — under the law a defendant, after a jury trial and a finding of guilty, is entitled to forty-eight hours, I believe it is, from the time of the announcement of the verdict to the time of sentencing. I am wondering, in view of the fact that each of you are from a distant place, if you would desire

to waive that forty-eight hour period and have the sentence imposed at this time.

MR. HOWARD: May I confer with my associates.

THE COURT: Yes, sir.

MR. HOWARD: If it pleases the Court, I have checked with my associates, I have also checked with the defendant and I checked with his mother and grandmother. At this time it is the desire of all concerned to have the Court impose sentence at this time, and we would therefore waive the forty-eight hours.

THE COURT: Thank you, Mr. Howard, Mr. Rogers, would you and your attorneys please come before the Court? Mr. Rogers, you have heard the verdict of the jury, and it now becomes my duty, as you understand, to impose sentence in conformity with the verdict of the jury. I would ask you first if you have anything to say before sentence is pronounced?

MR. ROGERS: No, sir.

THE COURT: I do wish to note at this time that throughout the past week, as we progressed with this trial, and today and at the moment, that I have observed Mr. Rogers' behavior. I feel that he has shown perfect composure and understanding of this situation and the proceedings. That is, I feel that you understand what this has all been about throughout. Am I correct in this, Mr. Rogers?

MR. ROGERS: Yes.

THE COURT: I would ask counsel if they've seen anything to the contrary.

MR. HOWARD: We have not.

THE COURT: You have nothing to say of record before sentence is pronounced, and it is therefore my

duty to say, sir, that having been found guilty as charged, that it is the judgment and sentence of the Court that you serve in the State Penitentiary under the Department of Correction for the State of Arkansas, for the period of your natural life. Mr. Rogers, you know, I'm sure, that you have a right to appeal this verdict, this judgment, this sentence that you received here today. And I'm glad you have such fine counsel. And I would like to compliment each of you, Mr. Howard, Mrs. Miller and Mr. Myerson, for the fine manner in which you have represented Mr. Rogers. Mr. Rogers, regardless of everything, you owe a debt of gratitude to these three people who have endeavored so much in your behalf. Do you agree with me about this?

MR. ROGERS: Yes.

. . .

The sentencing procedure in this case is remarkably similar to the procedure in our recent case of *Clark* v. *State*, 264 Ark. 630, 573 S.W. 2d 622 (1978). In *Clark* appellant was convicted of two counts of capital felony murder and sentenced to death by electrocution. On appeal he alleged he had been denied his right to allocution. After the verdicts were returned, the trial court had asked appellant: "Do you have anything that you wish to say?" After a discussion about appeal, the court then inquired: "You understand everything that is going on?" When appellant responded affirmatively, the court pronounced sentence. Holding appellant had demonstrated no prejudicial error regarding allocution, we stated:

The purpose of a statute such as ours is to give the accused, upon sentencing, an opportunity to show any cause why sentence should not be pronounced. Where a question is addressed to the defendant which affords him an opportunity to express why sentencing should not be pronounced, it is unnecessary that the precise language of the statute be used. [Citations omitted] Here the question asked by the court upon sentencing of the appellant gave him the unfettered right to state any

cause, legal or otherwise, as to why sentence should not be pronounced. The appellant's response was not restricted in any manner.

For the reasons enunciated in *Clark* coupled with the fact that the trial court afforded petitioner with more than ample opportunity to be heard, we find that petitioner was not denied his right to allocution.

Furthermore, as we also noted in *Clark*, petitioner was present with counsel at sentencing, and there was no objection raised to the procedure. In addition, no objection was raised by motion for new trial or on direct appeal. Even now petitioner has failed to allege the *cause* of his failure to object to the procedure employed by the trial court and to demonstrate the *prejudice* that resulted, which are required when raising an underlying constitutional issue for the first time in a postconviction proceeding when no objection was raised at trial. *Wainwright* v. *Sykes*, 433 U.S. 72 (1977). Petitioner does not, even now, state what he desired to have presented to the trial court.

Secondly, petitioner alleges that he was arbitrarily, capriciously and freakishly sentenced to life imprisonment without parole and that the imposition of such a sentence in the context of his rape conviction is cruel and unusual punishment. Petitioner's allegation is inaccurate. He was not sentenced to life imprisonment without parole, a sentence that was not within the range of punishment for the offense or submitted to the jury for its consideration, but to life imprisonment.

Petitioner was convicted of first degree rape, in violation of Ark. Stat. Ann. § 41-3401 (Supp. 1973), as having engaged "in sexual intercourse with a female: (a) by forcible compulsion; . . . " Ark. Stat. Ann. § 41-3401, *supra*, was a codification of Act 362, 1967 Ark. Acts, which also provided punishment as follows: "Any male, upon conviction of first degree rape, shall be subject to death or thirty (30) years to life imprisonment in the State Penitentiary." Ark. Stat. Ann. § 41-3403 (Supp. 1973). However, Act 438, 1973 Ark. Acts, codified as Ark. Stat. Ann. §§ 41-4701 — 16 (Supp. 1973), which was in

effect at the time petitioner was sentenced, abolished the death penalty for first degree rape and also established a new classification of felonies and a new sentencing procedure called "life imprisonment without parole." However, this new sentence was not included in the range of punishment for first degree rape. Ark. Stat. Ann. § 41-4701 (Supp. 1973) reclassified felonies in the following manner:

*Categories of felonies.* — Felonies are classified for the purpose of sentence, and for any other purpose specifically provided by law, into the following categories:

(a) capital felony;

(b) life felony without parole;

(c) life felony; and

(d) felony

Ark. Stat. Ann. § 41-4702 (Supp. 1973) defined capital felonies, and rape was not included as a capital felony. Ark. Stat. Ann. § 41-4703 (Supp. 1973) provided that when any person was convicted of a capital felony defined in § 41-4702 and the jury found that existing mitigating circumstances, which were set forth in § 41-4712, precluded the imposition of the death penalty, the crime should be a life felony without parole and punishable as provided in § 41-4707, as follows:

*Conviction of life felony without parole — Punishment.* — A person convicted of a life felony without parole shall be imprisoned in the Arkansas State Penitentiary for the remainder of his life and shall not be released except pursuant to a commutation, pardon, or reprieve of the Governor, conducted and granted in accordance with Section 14 [§ 41-4714] hereof.

Furthermore, Ark. Stat. Ann. § 41-4706 (Supp. 1973) provided that a sentence of life imprisonment without parole could be imposed on a person convicted of a capital felony, under a procedure set out in § 41-4710 which provided for

aggravating *and* mitigating circumstances. So it can be seen that Act 438 created a capital felony, which was subject to a sentence of life imprisonment without parole, and a life felony without parole. Ark. Stat. Ann. § 41-4715 (Supp. 1973) provided:

> *Parole — Persons ineligible.* — A person sentenced for a capital felony to life without parole or for a life felony without parole shall not be eligible for parole and shall not be paroled.

Ark. Stat. Ann. § 41-4716 (Supp. 1973) provided:

> *Parole — Sentence commuted to a term of years — Effect.* — If a person sentenced to life without parole or for a life felony without parole has his sentence commuted by the Governor to a term of years, such person shall not be paroled, nor shall the length of his incarceration be reduced in any way to less than the full term of years specified in the order or commutation or in any subsequent orders of commutation.

We have taken the time to distinguish between a capital felony, with a sentence of life imprisonment without parole, and a life felony without parole only to emphasize the fact that petitioner was not charged, tried, convicted or sentenced under either.

Petitioner was sentenced under Ark. Stat. Ann. § 41-4704 and § 41-4708 (Supp. 1973) which provided, respectively:

> *Life felonies.* — All other offenses for which life imprisonment or death in the electric chair is presently prescribed by Arkansas law shall be life felonies and shall be punishable as provided in Section 8 [§ 41-4708] hereof.

> *Conviction of life felony — Punishment.* — A person convicted of a life felony shall be imprisoned in the State Penitentiary for the remainder of his life and shall not be released except pursuant to a commutation, pardon, or

reprieve of the Governor or pursuant to parole procedures now or hereafter established by law.

Petitioner may be released on parole under the conditions of Ark. Stat. Ann. § 43-2807 (Repl. 1977), which provides:

> (b) Life Imprisonment. (1) Individuals sentenced to life imprisonment prior to March 1, 1968, and those sentenced to life imprisonment after the effective date [February 12, 1969] of this Act, shall not be eligible for release on parole unless such sentence is commuted to a term of years by executive clemency. When such life sentence has been commuted to a term of years, the individual shall be eligible for release on parole after having served one-third (1/3) of the time to which the life sentence was commuted, with credit for good time allowances.

Hopefully, any confusion that may exist regarding petitioner's actual sentence is eliminated.

We turn now to petitioner's allegations, substituting the sentence of life imprisonment, as if petitioner had made the same allegations as to that sentence as he made to a sentence of life imprisonment without parole. Petitioner alleges that imposition of the sentence in the context of his rape conviction is cruel and unusual punishment. To support his allegation petitioner states that he was a "youth of tender age" (16 years old when the crime was committed and 17 years old when he was convicted) and had no prior involvement with the law. He further states that the victim was an adult (21 years old at the time of the conviction, so apparently 20 years old at the time of the offense) and sustained no permanent injuries — physical or psychological, which is apparently a matter of speculation. He further states that the victim was "not tortured or subjected to any vile or inhuman treatment." Assuming *arguendo* that we will review the sufficiency of the evidence in this case, which we will not, *Houser v. United States*, 508 F. 2d 509 (8th Cir. 1974), we can think of few offenses more vile than the offense of rape.

We think it necessary to point out that petitioner is not challenging the constitutionality of the statute under which he was sentenced, which imposes a maximum sentence of life imprisonment, as being cruel and unusual punishment, which would be a ground of relief cognizable under postconviction proceedings. *Houser* v. *United States, supra*. Petitioner is alleging that the imposition of a life sentence by a jury under the facts and circumstances of this particular case is cruel and unusual punishment.

Postconviction relief was not designed to permit an attack upon a sentence which is within the statutory limits, *Credit* v. *State*, 247 Ark. 424, 445 S.W. 2d 718 (1969). The constitutional prohibition of cruel and unusual punishment is directed toward the kind of punishment, not its duration. The fact that punishment is severe does not make it cruel and unusual. *Hinton* v. *State*, 260 Ark. 42, 537 S.W. 2d 800 (1976). The imposition of a maximum sentence for an offense is not cruel or unusual punishment. *Johnson* v. *State*, 214 Ark. 902, 218 S.W. 2d 687 (1949). As we stated in our original opinion, *Rogers* v. *State, supra*, "if a sentence is within the limits established by the legislature, it is valid even though it is insisted that the punishment is unconstitutionally excessive."

Petitioner broadens his allegation that the punishment imposed was cruel and unusual by stating that due to a lack of guidelines to assist the jury in its sentencing determination, the discretion of the jury in imposing the sentence resulted in an arbitrary, capricious and freakish sentencing. Petitioner is apparently trying to avail himself of the dicta enunciated in *Collins* v. *State*, 261 Ark. 195, 548 S.W. 2d 106 (1977), and the other cases involving the death penalty that followed. We do not think *Collins* went that far. In the first place, *Collins* addressed the constitutionality of our death penalty statute, which we consider to be a unique situation. We there stated that our statute complied with the necessary safeguards required to prevent an arbitrary, capricious, wanton or freakish imposition of the death penalty by a jury. The substance of our opinion was directed to the constitutionality of the statute itself. We find no requirement that a jury be given guidelines for the imposition of any sentence other than when an accused is charged with a capital felony. As long as the sentence

is within the range of punishment authorized by statute, the jury may exercise its discretion in imposing the sentence.

In *Collins* we recognized the power of the trial court, Ark. Stat. Ann. § 43-2310 (Repl. 1977) and this Court, Ark. Stat. Ann. § 43-2725.2 (Repl. 1977), to modify or reduce sentences. Ark. Stat. Ann. § 43-2310, *supra*, provides:

> *Reduction of verdict.* — The court shall have power, in all cases of conviction, to reduce the extent or duration of the punishment assessed by a jury, if, in the opinion of the court, the convicion is proper, and the punishment assessed is greater than, under the circumstances of the case, ought to be inflicted, so that the punishment be not, in any case, reduced below the limit prescribed by law in such cases.

There can be no doubt that the trial court had the power to reduce petitioner's sentence after the verdict was returned, but it did not do so. However, after petitioner's valid sentence had been put into execution and an appeal was taken to this Court, the trial court was without jurisdiction to modify, amend or revise it, either during or after the term at which it was pronounced. *Shipman v. State,* 261 Ark. 559, 550 S.W. 2d 424 (1977). The trial court now would only have jurisdiction to review petitioner's sentence, if prior permission were granted by this Court, under Rule 37, *Rules of Criminal Procedure, supra,* not under Ark. Stat. Ann. § 43-2310, *supra.* In other words, the scope of review would be limited to the provisions found in Rule 37, and the jurisdiction of the trial court to reduce petitioner's sentence under Ark. Stat. Ann. § 43-2310 has expired. Again, we call attention to the fact that neither petitioner nor his attorneys invoked Ark. Stat. Ann. § 43-2310 at any time after the verdict was rendered, either before or after sentencing.

In *Collins* we also discussed the power of this Court to reduce a sentence on appeal. Ark. Stat. Ann. § 43-2725.2, *supra,* provides that a sentence of an appellant may be reduced if it is deemed excessive. However, reiterating our holding in *Abbott v. State,* 256 Ark. 558, 508 S.W. 2d 733 (1974), we emphasized the fact that reduction of a sentence deemed to

be excessive by this Court must be predicated on legal error and preserved the distinction between executive clemency and appropriate judicial review where there is error pertaining to the sentence. In *Abbott* we stated that the statutory provisions whereby we are vested with authority to reduce an excessive sentence, Ark. Stat. Ann. § 43-2725.2, *supra*, do not empower this Court to reduce a sentence that is otherwise proper and within statutory limits. The power to reduce a sentence must have legal justification, and

> [t]here is a vast difference in reviewing a sentence for error (including error resulting from insufficient evidentiary support) in the sentencing procedure and reviewing a sentence resulting from a proper and legal sentencing procedure where sufficiency of the evidence is not a basis for review. *Collins* v. *State, supra.*

Subsequent to *Collins,* in *Giles* v. *State,* 261 Ark. 413, 549 S.W. 2d 479 (1977), we reduced a capital felony conviction imposing the death penalty to a conviction of life felony-murder without parole with a sentence of life imprisonment without parole.[1] This was not done because *in our judgment* the facts of the case did not warrant the death penalty, but because the jury found no existing mitigating circumstances when the evidence clearly indicated appellant was impaired as a result of mental disease or defect. We stated that the jury was not free to arbitrarily disregard testimony where there was no conflicting testimony and there was no issue of credibility to be resolved. Since in our judicial capacity we could not weigh the mitigating circumstance and the existing two aggravating circumstances, as that function is for the jury, we reduced the conviction and sentence. However, the reduction was based upon objective evaluation of legal error and not on a subjective determination that the facts of the case did not warrant the imposition of the death penalty.

In *Collins* we stated that the arbitrary, capricious, wanton or freakish imposition of the death penalty would seem to be a ground for modification of sentence under Rule 37. However, the penalty is, as we stated earlier, unique, and

---

[1]Unless the Attorney General had requested, within 17 days, a remand for a new trial.

*Collins* did not create an extended review under Rule 37 of all sentences that are alleged to be excessive under the particular facts of the case. If the penalty assessed against petitioner is too severe under the facts of the case, it is a matter that addresses itself to executive clemency and not to this Court. *Randle and Wright* v. *State*, 245 Ark. 653, 434 S.W. 2d 294 (1968). Most importantly, however, this issue, including an argument that the jury did not arrive at a determination devoid of passion and prejudice, was raised on appeal, decided adversely to petitioner, *Rogers* v. *State, supra,* and is not cognizable in a petition for postconviction relief. *Houser* v. *United States, supra.*

In conclusion, we address the opinion of the United States District Court wherein petitioner's second allegation in this Court was discussed. The district court said:

> A sentence to life imprisonment without parole may not literally be 'life without hope,' as Rogers argues, but it is close. He is an exile from life, forever excluded from its enjoyment. He may hope for clemency — either pardon, or far more likely, commutation — but the hope is a thin reed. Executive clemency is a matter of grace. It is a prerogative that need never be exercised, and the chance that it will be exercised in any given case cannot be measured. There is no right to parole, either, and life with the possibility of parole can turn out in practice to be literally imprisonment for life, but parole is a much less remote contingency than clemency. Parole is granted in most cases before the expiration of a full term of imprisonment. The death penalty is unique, but so is life without parole. It is the loss, not of life itself, but all that makes life worth living.

Apparently, the district court was also under the mistaken impression that petitioner's sentence was life imprisonment without parole instead of life imprisonment. It is true that before petitioner can be subject to be released on parole, his sentence must be commuted to a term of years by executive clemency, Ark. Stat. Ann. § 43-2807, *supra;* however, that possibility is not a "remote contingency." We take judicial notice of the fact that 30 life sentences have been commuted

to a term of years by the Governor of Arkansas in less than five years. See Governor's Clemency Proclamations, November 19, 1974, to March 15, 1979, Nos. 2579, 2580, 2583, 2586, 2587, 2588, 2589, 2591, 2599, 2610, 2611, 2612, 2613, 2614, 2615, 2618, 2619 & 2632, 2621, 2624, 2625, 2637, 2642, 2644, 2659, 2695, 2704, 2705, 2740, 2762 and 2767. Office of the Secretary of State of Arkansas.

It appears to us that the number of years petitioner will have to serve on his life sentence now rests, first, in his hands, in relation to his conduct while imprisoned, and, second, in the hands of the executive branch, not the judicial branch, of government.

Accordingly, petitioner's present petition for permission to proceed under Criminal Procedure Rule 37 is hereby denied.

Petition denied.