Larry SHEPHERD *v.* STATE of Arkansas

CR 80-108                                    605 S.W. 2d 414
Supreme Court of Arkansas
Opinion delivered September 29, 1980

458

*E. Alvin Schay*, State Appellate Defender, by: *Ray Hartenstein*, Chief Deputy Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *Jack W. Dickerson*, Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Chief Justice. Appellant Larry Shepherd was found guilty of sexual abuse in the first degree in violation of Ark. Stat. Ann. § 41-1808 (Repl. 1977). The alleged victim was Velma Jean Sims, aged eight years, who was a neighbor's daughter, placed under Shepherd's supervision by her mother at the time of the alleged offense. Shepherd was also found guilty of the rape of Kelley Shepherd, his daughter, who was under the age of eleven years. The verdicts of guilty were rendered by a jury after the charges had been joined for trial. Shepherd was sentenced to five years' imprisonment for sexual abuse of the neighbor's daughter and life imprisonment for the rape of his daughter, pursuant to the verdicts rendered. The sentences are to run concurrently. Shepherd argues only two points for reversal. They are:

I

THE IMPOSITION UPON APPELLANT OF A LIFE SENTENCE BY A JURY EXERCISING STANDARDLESS DISCRETION VIOLATED APPELLANT'S RIGHT TO DUE PROCESS OF LAW AND HIS RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

II

IT WAS PREJUDICIAL ERROR TO ALLOW THE PROSECUTOR TO IMPREACH APPELLANT'S EXPERT WITNESS BY READING FROM A TEXT THAT WAS NOT ESTABLISHED AS AUTHORITATIVE.

It is difficult to state the basis of Shepherd's argument on this point with any degree of exactitude. As we understand the argument, he does not contend that the imposition of the sentence was cruel and unusual punishment. Shepherd does not contend that the applicable statute, Ark. Stat. Ann. § 41-1803 (Repl. 1977) is unconstitutional on its face because it does not establish guidelines for the exercise of a jury's discretion. He does argue, however, that he was denied due process of law under the Eighth and Fourteenth amendments to the Constitution of the United States by the imposition of a life sentence by a jury exercising "standardless sentencing discretion." The gist of the argument seems to be that the statute, Ark. Stat. Ann. § 41-1803, establishes no degrees of the crime of rape, the definition of which covers a varied range of acts, and that the range of punishment for any of these acts, under Ark. Stat. Ann. § 41-901 (1) (a) (Repl. 1977), i.e., not less than five years, nor more than 50 years, or life imprisonment, is so wide that it is necessary that the jury be given standards to guide it in its sentence determination in order that the minimal due process requirements be met by minimization of the risk of wholly arbitrary and capricious action by the jury in fixing punishment in any particular case. Specifically, appellant argues that he was denied minimum due process guaranteed him by the Eighth and Fourteenth Amendments through the imposition of a life sentence in this case, because of the following: no permanent injury, either physical or psychological, was done to the victim, Kelley Shepherd, his eight-year-old daughter; that no force or threat of force was involved; that acts similar to those of appellant were performed on Kelley by boys so young that they could not be held criminally responsible; appellant had no prior criminal record, but had a past history of "mental and sexual illness" and a diagnosis of "passive dependent character disorder" for which he had sought treatment, at a time when he was so despondent and remorseful that he had requested castration as a solution to his problem; appellant had voluntarily continued treatments for two years up until April, 1979, when treatment was terminated because the treating physician felt that he had resolved his problem; appellant had a sincere desire to remedy his disorder, as evidenced by his expression of a desire for continued treatment at the time he was sentenced; appellant, since

September, 1978, had been in consultation with a 'SCAN[1] employee, who had been apprised of the fact that appellant, as a child, had been the victim of sexual attacks by his uncle; and appellant will not be eligible for parole unless sentence is first commuted to a term of years by executive clemency.

Before we treat the basic due process question, we point out that we find no merit in some of appellant's factual premises. We find no basis for the contention there is no evidence Kelley Shepherd has suffered any psychological injury. We have no reason to relate the revolting evidence in detail, but we cannot comprehend the argument that there was no basis for a finding of psychological injury to an eight-year-old female, by reason of the acts of her 39-year-old father. There was testimony that he would talk her and her eight-year-old girl friend into putting on "strip acts" in the presence of boys under 13 years of age; would, at least permit, if not encourage some of these boys to disrobe on some of these occasions, and not only fondle his child about her private parts, but lay on top of her, put his "woo-woo" in her and move up and down, all in the presence of her girl friend and the male children, who, in his presence, sometimes did the same thing he did. It is also difficult to find any mitigation in the fact that Larry Shepherd observed, permitted and perhaps encouraged the male children to engage in intercourse with his daughter.

The details of appellant's "mental and sexual illness" and the details pertaining to his treatment were related to the jury in considerable detail. It was no doubt considered by the jury, even though no instruction on mental illness was given or requested. The absence of violence does not always affect the strength of society's interest in deterring a particular crime or in punishing a particular criminal. *Rummel* v. *Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed. 2d 382 (1980). Certainly, society has a considerable interest in deterring crimes of this sort and in punishing one who commits a crime so vile as this.

Appellant complains that the jury was given no instruc-

---

[1]This word is an acronym for Suspected Child Abuse & Neglect.

tions or standards to guide its sentencing discretion. He is really in no position to complain on this point; he asked for no instruction giving any guidelines. As a matter of fact, appellant's entire argument is made for the first time on appeal. We find absolutely no objection to the instructions given, or to the verdict form submitting the question of the sentence to be imposed by the jury. The trial judge specifically asked if there were any requests for additional instructions or objections to instructions given, which included the verdict forms later submitted. Appellant's attorney answered in the negative. The only motion for a directed verdict was based upon the alleged failure of the state to prove the time of the offense with sufficient certainty. This motion was properly overruled. We do not consider issues raised for the first time on appeal, even though they are potentially of constitutional magnitude. *Clark* v. *State*, 264 Ark. 630, 573 S.W. 2d 622. This rule also applies to verdict forms, instructions given and instructions not requested. *Goodwin* v. *State*, 263 Ark. 856, 568 S.W. 2d 3; *Fauna* v. *State*, 265 Ark. 934, 582 S.W. 2d 18; *Hilliard* v. *State*, 259 Ark. 81, 531 S.W. 2d 463; *White* v. *State*, 266 Ark. 499, 585 S.W. 2d 952. See also, *Wilson* v. *State*, 261 Ark. 820, 552 S.W. 2d 223.

We do not hesitate, however, to say that we do not agree with appellant that a sentence to life imprisonment is so unique that legislative guidelines for the exercise of a jury's discretion in imposing it are mandated by the due process requirements of the Eighth Amendment to the federal constitution imposed upon the states by the Fourteenth Amendment. In this respect we totally disagree with *Rogers* v. *Britton*, 476 F. Supp. 1036 (E.D. Ark., 1979), now pending on appeal to the Eighth Circuit Court of Appeals. We adhere to the views previously expressed by us in the same case in *Rogers* v. *State*, 265 Ark. 945, 582 S.W. 2d 7. There we found no requirement that a jury be given guidelines for the imposition of any sentnece in any case other than one in which the death penalty may be imposed. Although the question addressed in *Rummel* v. *Estelle*, supra, was whether imposition of a life sentence in that particular case constituted cruel and unusual punishment, we find some support for our position in the statements in the opinion in that case that decision of the United States Supreme Court applying cruel and unusual

punishment standards to capital cases are of limited assistance in deciding the constitutionality of the imposition of the sentence of life imprisonment in the case before it. That court went on to say that, given the unique nature of the punishments considered in *Weems* v. *United States*, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910), [also relied upon by appellant] and in the death penalty cases, one could argue, without fear of contradiction by any decision of that court, that for crimes classified and classifiable as felonies and punishable by significant terms of imprisonment, the length of the sentence imposed is purely a matter of legislative prerogative. Even though appellant quoted from *Rogers* v. *Britton*, supra, on the matter of disproportionality of a sentence, we do not interpret his argument as asserting that the imposition of the sentence in this case is unconstitutionally disproportionate to the nature of the offense. If we did, it would be foreclosed by *Rummel*.

## II

Appellant called Dr. Edwin White, a psychiatrist who had treated him previously. This doctor expressed the opinion, as an expert, that it would be very unlikely that appellant would risk penetration of any child because of a passive dependent character disorder and a fear of being homosexual. On cross-examination, Dr. White said that he had used the term pedophilia in his diagnosis of appellant. When asked to define the term, the witness replied: "I interpret pedophilia as directing sexual drives toward children." When asked, Dr. White had said that he was familiar with a book by a Mr. Coleman, entitled "Abnormal Psychology, Modern Life." When he was asked if he recognized Coleman as an expert in his field, Dr. White said that he recognized Coleman "as an expert editor who compiles information from varied sources, and is considered reliable." Dr. White agreed with a statement from the book that, in regard to pedophilia, intimacy usually involves manipulation of the child's genitals, but said that was different from penetration. When the prosecuting attorney started a question as if he were commencing another statement from the book, appellant's attorney objected on the ground that the state had not established that Coleman was a qualified psychiatrist, the court

ruled that the particular witness considered Coleman reliable. The objection was not further pursued and the prosecuting attorney continued the examination from the book, reading a statement that "The intimacy usually involves manipulation of the child's genitals or in the case of female victims, partial or complete penetration of the vagina," as a part of the definition of pedophilia. After explaining that there was a great difference between genital to genital contact and penetration and that he had said that it was very unlikely that there would be penetration due to Shepherd's "passive dependent character disorder," the doctor was asked, "Isn't it true that in pedophilia it is not unlikely for someone to penetrate a young female?" He then answered, "That can also be included as a part of the definition."

Appellant now argues that the objection went to Ark. Stat. Ann. § 28-1001, Rule 803 (18) (Repl. 1979), even though the rule had not been mentioned at the trial. In any event, Rule 803 is a list of exceptions to exclusion under the hearsay rule which is applicable even though the declarant is available as a witness.[2] Under exception (18) a statement in a published treatise on a subject of medicine, or other science or art, established as a reliable authority by testimony or admission of the witness or by other expert testimony or by judicial notice, to the extent called to the attention of an expert witness on cross-examination, is not excluded from the hearsay rule. The prosecuting attorney did not offer the text or the article on the statements in evidence. Appellant raised the question whether the *treatise* was established as a reliable authority. We are not advised of the identity of the author of the statements about which Dr. White was asked. We do know that the reliability of Coleman had been established by Dr. White and that he did not completely disagree with the statements about which he was asked. He did express at least partial agreement. It seems that an editor, in the sense used here, might well be taken to be one who directs or supervises the policies or contributions of a work of reference, or the like, as the editors of an encyclopedia. Webster's New Inter-

---

[2]Rule 802 is not wholly consistent with *Ward* v. *Lamb*, 240 Ark. 850, 402 S.W. 2d 675 or *Davis* v. *Arkansas Best Freight System, Inc.*, 239 Ark. 632, 393 S.W 2d 237.

national Dictionary, 2d Edition. The reliability of such an editor might lend some degree of reliability to a treatise edited by him.

The trial judge has considerable latitude of discretion in determining the scope and extent of proper cross-examination, and there is no reversible error unless that discretion is abused. *Bartley* v. *State*, 210 Ark. 1061, 199 S.W. 2d 965; *Hightower* v. *Sholes*, 128 Ark. 88, 193 S.W. 257; *Nelson* v. *State*, 257 Ark. 1, 513 S.W. 2d 496. This means that the rules are not inflexible and that there is some leeway for the exercise of sound judgment by the trial judge. *Arkansas State Highway Comm'n.* v. *Cutrell*, 263 Ark. 239, 564 S.W. 2d 213. The determination of reliability was for the trial judge. Weinstein's Evidence, § 803 (18) [02], p 803-248. He has some latitude of discretion in making the determination, where the cross-examination is in good faith. *Iverson* v. *Lancaster*, 158 N.W. 2d 507 (N.D., 1968). See also, *McCay* v. *Mitchell*, 62 Tenn. App. 424, 463 S.W. 2d 710 (1970); *Jeanes* v. *Milner*, 428 F. 2d 598 (8 Cir., 1970). Courts should be especially liberal in allowing full and complete cross-examination of an expert witness giving opinion evidence, either for the purpose of impeaching his credibility or eliciting matter for consideration of the jury in weighing his testimony. *Arkansas State Highway Comm'n.* v. *Dean*, 247 Ark. 717, 447 S.W. 2d 334.

Reversible error may not be predicated upon a ruling admitting evidence unless a substantial right of a party, such as appellant, is affected. Ark. Stat. Ann. §28-1001, rule 103 (a) (Repl. 1979). In view of the circumstances prevailing here, we are unwilling to say that there was reversible error or an abuse of the trial court's discretion on this point.

We find no other rulings of the trial court overruling any objection or denying any motion or request made by appellant that merit any discussion, or amount to prejudicial error.

The judgment is affirmed.

Mays, J., concurs.

RICHARD L. MAYS, Justice, concurring. Since appellant did not object to the lack of guidelines for controlling the jury's discretion concerning the imposition of punishment, I agree that the judgment should be affirmed. However, had this issue been raised below, I would hold that appellant's due process rights were violated by permitting the jurors to impose a life or five year sentence on the same facts without standards to control their discretion. See *Rogers* v. *Britton*, 476 F. Supp. 1036 (E.D. Ark. 1979).